IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES LEE MACK                                                      PETITIONER

VS.                                          CIVIL ACTION NO 3:14cv814-DPJ-FKB

RICK McCARTY                                                      RESPONDENT

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

James Lee Mack is a Mississippi state prisoner serving a life sentence without

parole for murder and a 20-year sentence for arson.   He filed this action seeking

federal habeas relief pursuant to 28 U.S.C. § 2254.   Having considered the petition,

response, Mack's motion for partial summary judgment, and the state court record, the

undersigned recommends that Mack's motion be denied and that habeas relief likewise

be denied.

### II. FACTS AND PROCEDURAL HISTORY

On the morning of January 14, 2009, firefighters with the Jackson Fire

Department and officers with the Jackson Police Department responded to a fire at an

abandoned house on Flag Chapel Road in Jackson, Mississippi.   Inside, they

discovered a badly charred body in the bathtub and evidence of the presence of

accelerants.   Investigators began talking with witnesses and soon learned that James

Mack had been frequenting the house.   Dexter Walker, a long-time acquaintance of

Mack, met with law enforcement authorities later that day and told them that Mack had

1

been living with him in his apartment until a few days earlier and had since been staying

in an abandoned house on Flag Chapel Road.   He related that Mack had appeared at

his apartment shortly after midnight and had told him that he had "murked a n******" and

was going to get some gas in order to burn down the house.   According to Walker,

Mack had shown him the credit cards Mack had obtained from the victim and had told

Walker that he was driving the victim's car and intended to sell it.   Based on information

from Walker, investigators tentatively identified the victim as Christopher Newsome; the

identification was subsequently confirmed by DNA analysis.

A warrant was issued later that day for Mack's arrest.   Mack voluntarily turned

himself in to authorities that afternoon and gave a statement.   In his statement, Mack

related that he had met Newsome through an online gay chat room and had set up the

meeting for the purpose of robbing him.   Mack robbed Newsome at gun point and then

shot him, causing Newsome to fall back into the bathtub.   Mack then drove Newsome's

car to a nearby service station, purchased gasoline which he collected in a plastic jug,

and returned to the scene, where he poured the gasoline around the house and set the

house on fire.   He left in Newsome's car.

Mack was indicted and tried for arson and capital murder in the Circuit Court of

Hinds County, Mississippi.   At the trial, officers with the fire department and police

department testified regarding their investigation and Mack's confession.   The

pathologist who performed the autopsy testified that Newsome had died from a bullet

wound to the head.   Dexter Walker testified regarding Mack's statement to him.

Mack's defense consisted of questioning the truthfulness of the confession as testified

to by law enforcement officers and questioning Walker's motives for his statement and testimony.   Mack did not take the stand, and he put on no evidence.

The jury convicted Mack on both counts, and the court sentenced him to serve a term of life imprisonment without parole on the capital murder conviction and twenty years on the arson conviction, the sentence for arson to run consecutively to the life sentence.   The Mississippi Court of Appeals affirmed his conviction and sentence. *Mack v. State*, 129 So. 3d 230 (Miss. Ct. App. 2013).   His petition to the Mississippi Supreme Court for a writ of certiorari was denied.   Mack later filed in the supreme court an application to proceed in the trial court with a motion for post-conviction relief (PCR), alleging trial errors and ineffective assistance of counsel.   The supreme court denied relief.   In its order, the court stated that it was denying Mack's claims of ineffective assistance without prejudice because of his failure to include supporting affidavits

with his application.[1]    Mack then filed the present action in this court.[2]  Respondent filed

a motion to dismiss, arguing that Mack's claims of ineffective assistance of counsel had

not been exhausted, in that the supreme court's order denying post-conviction relief

suggested that the court might entertain a second post-conviction application for

ineffective assistance if it were properly supported.    This court denied the motion but

stayed the case pending Mack's exhaustion of his state court remedies as to his

ineffective assistance claims.    Mack filed a second post-conviction application, again

---

[1]  The precise language of the supreme court's order is relevant to the standard of review of two claims.
*See infra* note 3 and accompanying text.   The body of the order is therefore quoted here in its entirety:

> This matter is before the panel of Dickinson, P.J., Lamar and Chandler, JJ., on the
> application for post-conviction collateral relief filed by James Lee Mack, Jr., pro se.   Mack
> asserts that he is entitled to post-conviction relief based on claims of ineffective assistance
> of counsel, defective indictment, insufficiency of the evidence and that the trial court erred
> in denying him the opportunity to impeach the State's witness.   Mack's conviction and
> sentence were affirmed on appeal in 2013.
>
> After due consideration, the panel finds that the issues regarding the indictment and
> insufficiency of the evidence are now waived for Mack's failure to raise those claims before
> the trial court or on direct appeal.   Likewise, the claim regarding impeachment of the State's
> witness was raised on direct appeal and addressed by the Court of Appeals.   Therefore, the
> claim is now barred by the doctrine of res judicata.   The petitioner must provide some basis
> for the validity of the claim before the procedural bar will be waived.   After due
> consideration, we find Mack has presented no "arguable basis" for these claims.   Therefore
> these claims should be dismissed.
>
> Finally, on the assertion of ineffective assistance of counsel, Mack fails to include supporting
> affidavits of facts or a sworn oath to support his assertions regarding the claims of counsel's
> deficient conduct.   Therefore, this claim should be dismissed without prejudice.
>
> It is therefore ordered that the application for post-conviction collateral relief filed by James
> Lee Mack, Jr., is hereby dismissed.

[24-2] (internal citations omitted).

[2]  Mack had filed a previous habeas petition in this court while his state PCR application was pending.
That petition was dismissed without prejudice because of his failure to exhaust state remedies. *See
James Lee Mack v. Mississippi Department of Corrections*, Civil Action No. 3:12cv855-TSL-JMR.

setting forth his claims of ineffective assistance.    The Mississippi Supreme Court

denied the application on the merits.

Mack raises the following grounds for relief in his petition before this court:

1.    He is being held unconstitutionally because the name and social security number on the indictment and on the sentence commitment notice are not his.

2.    The verdict was contrary to the weight of the evidence.

3.    His trial attorney, Faye Petersen, rendered ineffective assistance, in that she

   A.    failed to cross examine Detective Tyree Jones and Investigator Cheryl Matory about latent fingerprints found at the crime scene that did not match Mack's;

   B.    failed to point out to the jury that there was no video footage showing Mack's purchase of gasoline at nearby gas stations;

   C.    failed to meet with Mack prior to trial and prepare a defense, and, therefore, failed to discover that he had been deemed by the state to be mentally disabled; and

   D.    had a conflict of interest, in that at the time of Mack's trial, she had in her employ an attorney who had represented the state at Mack's preliminary hearing.

4.    The trial court committed error

   A.    in denying the defense's motion *in limine* to impeach the testimony of Dexter Walker by asking him about a prior conviction;

   B.    in denying the motion to suppress Mack's statement; and

   C.    in allowing Tameka Walker to testify as to parts of her statements and not her entire original statement and in allowing her to testify to matters that were not in her original statement.

### III.   ANALYSIS

Grounds one and two of Mack's petition were raised in his application for post-conviction relief and were determined to be procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1), Mississippi's contemporaneous objection rule.   Where a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is precluded unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   Mack has made no argument that either of these exceptions applies. Therefore, these claims have been defaulted for purposes of federal review.

Mack raised on direct appeal his claim regarding the impeachment of Dexter Walker, and the state court of appeals rejected it on the merits.   His claims of ineffective assistance were denied on the merits by the supreme court in his second PCR proceeding.   Because these claims were adjudicated on the merits by the state court, they are subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of Mack's claims involved "an unreasonable application of . . . clearly established Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court.   28 U.S. C. § 2254(d).   The Supreme Court has repeatedly emphasized that " 'an *unreasonable*

application of federal law is different from an *incorrect* application of federal law.'"
*Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410
(2000)).   "[A] federal habeas court may not issue the writ simply because that court
concludes in its independent judgment that the relevant state-court decision applied
clearly established federal law erroneously or incorrectly."   *Williams*, 529 U.S. at 411.
Rather, the application must be not only incorrect but also "objectively unreasonable."
*Id.* at 409.   Under this deferential standard, federal relief is precluded "so long as
'fairminded jurists could disagree' on the correctness of the state court's decision."
*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541
U.S. 652, 664 (2004)).

Mack's remaining two grounds consist of the claim alleging trial court error in the
denial of his motion to suppress and the claim regarding the testimony of Tameka
Walker.   The standard of review for these claims is not altogether obvious.   The
deferential standard of § 2254(d) applies only to claims that have been "adjudicated on
the merits" by the state court.   The order denying relief on Mack's first PCR application
does not explicitly state that these claims were denied on the merits. The question of
the proper standard of review in the present case is primarily academic, as whether
analyzed through the lens of § 2254(d) or *de novo*, the result is the same.   Even so, the
undersigned has concluded, consistent with the logic of *Crawford v. Epps*, 531 Fed.
Appx. 511 (5th Cir. 2013), and based upon the plain language of the state court order,
that the Mississippi Supreme Court overlooked these claims and never adjudicated
them at all.   *See supra* note 1.   In *Crawford*, the Fifth Circuit found that there had been

7

no adjudication on the merits, nor any adjudication at all, where the Mississippi Supreme Court had misunderstood the petitioner's argument and had therefore disregarded one of his claims.   *Crawford*, 531 Fed. Appx. at 516. In its order denying relief, the state supreme court specifically identified and addressed all the other claims in the application but never mentioned these two.   Thus, as in *Crawford*, the text of the state court's order indicates that the court never considered in any manner Mack's claims concerning admission of his confession and the testimony of Tameka Walker.[3] Accordingly, the undersigned concludes that § 2254(d) is inapplicable and that the proper standard of review for these two claims is *de novo*.

## A.  Ground Three:   Ineffective Assistance of Counsel

Analysis of ineffective assistance claims begins with the well-known test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that a

---

[3]The Supreme Court has created certain presumptions that apply when a state court order denying collateral relief is ambiguous as to whether a claim has been adjudicated on the merits.   In *Harrington v. Richter*, 562 U.S. 86 (2011), the state court had issued a one-word denial of the prisoner's application. The Supreme Court held that where a court fails to state the basis of its denial, there arises a rebuttable presumption that the adjudication is on the merits, rather than based upon a procedural ground.   *Id.* at 99.   In *Johnson v. Williams*, 133 S.Ct. 1088 (2013), the Court extended the *Richter* presumption to cover a situation in which the ambiguity concerned whether the claim was ever adjudicated at all.   In *Johnson*, the Ninth Circuit had applied *de novo* review to a Sixth Amendment claim involving the discharge of a juror, concluding that while the state court had adjudicated the state law claim arising out of the discharge, it had overlooked the Sixth Amendment claim. The Supreme Court reversed, stating that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted."   133 S.Ct. at 1096. Notwithstanding this broad language, the undersigned is not convinced that the *Johnson* presumption would apply in a case such as the one before this court.   The discussion in *Johnson* focuses exclusively on situations in which there are "parallel" or closely-related state and federal claims, that is, both state and federal claims arising out of the same set of facts, but where the state court explicitly acknowledges only the state claim in its opinion.   The situation in the present case differs from that of *Johnson*, as there were no other claims arising out of the same facts as Mack's claims concerning the admission of the confession and Tameka Walker's testimony.   But even assuming that the presumption applies, the undersigned concludes that the presumption is rebutted by the language of the Mississippi Supreme Court's order and its explicit identification of all other claims to the exclusion of the two claims at issue.

petitioner show that his counsel's performance was deficient and that the deficiency resulted in prejudice to the defense.   Furthermore, when § 2254(d) applies, the question is not whether counsel was ineffective under *Strickland.* Rather, the reviewing court must ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."   *Richter*, 562 U.S. at 105.

*Cross examination of Cheryl Matory and Tyree Jones.*   Mack's first allegation of ineffective assistance concerns his attorney's cross-examination of Cheryl Matory and Tyree Jones.   He claims that his attorney failed to question these witnesses about fingerprints that he contends were found at the crime scene and that were not his.   He also makes references to Petersen's failure to question them about DNA evidence.

Matory, a Jackson police officer, was the crime scene investigator who collected evidence at the scene.   She testified that she arrived on the scene about 6:38 a.m. and that the house was charred and still hot and smoky.   Matory described what she found in the house and the items she photographed and collected.   In her direct testimony, she made no mention of any attempts to take fingerprints or to take samples for DNA analysis.   On cross-examination, defense counsel questioned her as to whether she obtained any fingerprint samples for analysis.   The answer to this question is not entirely clear from her testimony. Initially, Matory testified that she attempted to lift fingerprints from numerous items and locations in the house but that she was unsuccessful because there were no prints, apparently because of the smoke and soot throughout the house.

9

However, immediately thereafter, her testimony was that she attempted to lift prints from 68 items of trash, for example, a Faygo can and a beer can, and that there were 20 latent prints.   Matory gave no indication that any such prints were ever analyzed.   Defense counsel then attempted to ask Matory whether she collected any samples that could be used for DNA analysis.   The prosecution objected as to foundation, and defense counsel rephrased the question, asking whether Matory attempted to swab for DNA samples from cans and bottles found in the trash at the house. She responded that she took 13 swabs.   Matory explained that the decision as to whether the swabs would actually be tested was not hers. Officer Jones gave no testimony concerning fingerprints or samples for DNA analysis.

Mack cannot establish ineffective assistance on this point.   First of all, even if it were the case that prints and DNA samples were recovered and tested and determined not to match Mack's, Mack cannot show that he was prejudiced by his attorney's failure to elicit testimony to that effect.   Matory and others testified that the abandoned house was full of trash, and thus it would be expected that samples matching persons other than Mack would be collected in the house.   And evidence showing the presence of persons other than Mack in the house would in no way exculpate Mack, given the significant evidence implicating him in the crime: other witnesses testified that Mack had been spending time in the house and that he had been there the day before the murder, and Mack confessed to the crime.   It cannot be said that it is more likely than not that the jury would have

acquitted Mack had Mack's attorney elicited testimony establishing that other persons had been in the house.

*Video footage from gas stations.*    In his second claim of ineffective assistance, Mack argues that his attorney should have made the jury aware that there was no video footage from nearby gas stations showing Mack purchasing gasoline.    According to Officer Jones's testimony, Mack told law enforcement officials that after he killed Newsome, he went to an "Express Gas" station to purchase gasoline and collected it in a plastic jug.[4]    On cross examination, defense counsel asked him whether he went to the gas stations as part of his investigation. Jones responded that he went to two gas stations that were close to the Flag Chapel house – a station having the word "express" in its name and located at the corner of Flag Chapel Road and Clinton Boulevard, and another station located at the corner of Flag Chapel Road and Northside Drive.    Jones's recollection was that the former station had no video footage.    He stated that the latter station had footage which Jones viewed and that neither Mack nor the victim's car appeared in the footage.    It was clear from Jones's testimony, as elicited by defense counsel, that investigators found no videotape footage showing Mack or the victim's car at the stations.    Again, Mack has failed to show what more his attorney could or should have done on this issue.

---

[4]  A one-gallon plastic jug and a matchbox were found in the house where the crime occurred.

Mack also contends that on cross-examination of Jones, his attorney should have brought out the fact that none of the store clerks had identified Mack as having purchased gasoline, a fact to which, according to Mack, Jones had testified at the preliminary hearing.[5]   This failure does not rise to the level of deficient performance: an attorney is not required to cross-examine law enforcement officers concerning every possible item of incriminating evidence that might have been found but was not.   Furthermore, given the strong evidence against him, including his confession and Dexter Walker's testimony, Mack cannot show that had his attorney raised this point, it is more likely than not that the result of the trial would have been different.

*Mental disability.*   Mack next argues that his attorney failed to meet with him prior to trial and that had she done so, she would have discovered that he had been deemed mentally disabled by the state and was entitled to have his legal guardian present during questioning.   In support of his allegation, he has submitted two documents:   a letter from the Social Security Administration indicating that he is entitled to Supplemental Security Income for some unspecified disability, [1-1] at 45, and an affidavit by his sister, April Majors, in which she states Mack "had been deemed mentally ill and unfit to make certain decisions by the state of Mississippi" and that as a result she was "acting as his legal guardian" at the time of his questioning and arrest, [26].[6]   Mack's theory is that had his

---

[5] The record contains no transcript of Mack's preliminary hearing.

[6] There is no document supporting or explaining Ms. Majors's assertions.

attorney known these facts, she could have used this information in support of the motion to suppress.

The record does not support Mack's claim that his attorney did not meet with him.   Prior to trial, Mack filed a *pro se* motion for appointment of new counsel.   When the judge questioned him about the motion at the pretrial motions hearing, Mack stated that although he had not talked with his attorney at the time he filed the motion, he had had discussions with her in the week prior to the hearing.   Also during the hearing, defense counsel stated that she had discussed the case with members of Mack's family in preparation for trial.   Moreover, it appears that Mack's attorney had some reason to suspect that he suffered from bipolar disorder, because at the hearing on the motion to suppress, she asked Officer Jones whether his interview would have been affected had he known that Mack was bipolar.

More to the point, however, is the fact that Mack has offered no evidence of circumstances that would or should have alerted his attorney to any additional basis for challenging his confession.   There is no affidavit from Mack stating that he told defense counsel about a mental disability.   In his affidavit submitted in support of his second PCR application, Mack made no mention of a mental problem, even though he complained of several failures on the part of his attorney. Neither is there an affidavit from any family member or anyone else stating that such information was given to Mack's attorney. Furthermore, the record as a whole does not contain any indication that Mack was mentally disabled to the

extent that he was incapable of making an intelligent, voluntary, and knowing confession.   The officers present at his interrogation testified that he indicated that he understood his rights and the contents of the written statement.   Officer Jones testified that Mack's answers to all questions were responsive and that there was nothing in his behavior that suggested he suffered from any mental impairment. Finally, Mack has included as an attachment to his petition a copy of a certificate indicating that he had obtained his GED, which fact would tend to indicate that he was capable of understanding the information about his rights and the questions posed to him by Jones and that he was likewise capable of reading and understanding the waiver of rights form and the typed statement.

In short, the record before this court does not support a finding that defense counsel was deficient in failing to raise an issue of mental disability at the suppression hearing.   The record before the state court, in ruling on this issue in Mack's PCR proceedings, was even weaker, as it did not contain the affidavit from Mack's sister.   And it is that record which matters, as this court's only task is to determine whether the state court's rejection of this claim constituted a reasonable application of *Strickland* and was based upon "a reasonable determination of the facts *in light of the evidence presented in the State court proceeding.*"   28 U.S.C. § 2254(d)(2) (emphasis added).   The state court's decision meets this standard.

*Conflict of interest.*   In his final claim of ineffective assistance, Mack argues that his attorney had a conflict of interest in her representation of him.   His allegation is that Frank Jones, an attorney employed with Faye Petersen at the

14

time of Mack's trial, had previously worked for the Hinds County District Attorney and had represented the prosecution at Mack's preliminary hearing. There is no indication that Jones had any involvement in Petersen's representation of Mack, and Mack does not allege any direct involvement. Rather, Mack's position is that Jones, having served as the prosecutor at the preliminary hearing, was biased against Mack and somehow influenced Petersen such that she acted against Mack's interests in some unspecified manner.

A threshold issue to be addressed is the proper analysis of this claim. The Sixth Amendment right to counsel includes the right to conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Habeas claims alleging denial of the Sixth Amendment right to effective counsel are normally analyzed under the familiar two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing that the attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 694. The analysis is altered where a petitioner alleges a Sixth Amendment violation based upon an active conflict of interest. In such a case, if a defendant establishes that the conflict of interest adversely affected the adequacy of his attorney's representation, he is relieved of demonstrating *Strickland* prejudice in order to obtain relief. *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980). But the Supreme Court has never extended this rule beyond simultaneous representation of multiple defendants. *Mickens v. Taylor*, 535 U.S.162, 174-75 (2002). Mack's allegation does not involve multiple representations nor any other active conflict of interest.

15

Accordingly, the appropriate framework for analysis is *Strickland*'s two-pronged test.

The undersigned has made a thorough examination of the record and finds nothing to suggest that defense counsel was working against Mack's interest. Before trial, Petersen sought to have suppressed the most damaging piece of evidence against Mack – his own statement - and ably argued that it should be excluded because of Mack's youth and alleged lack of understanding.   At trial, she thoroughly cross-examined the state's witnesses when appropriate and made appropriate arguments to the jury.   The evidence against Mack was substantial, and defense counsel's position was not an enviable one.   But nothing in the record indicates that her representation of Mack was in any way deficient.

For these reasons, the undersigned concludes that Mack has failed to meet his burden to show that all fair-minded jurists would agree that the state court's rejection of Mack's ineffective assistance claims conflicts with *Strickland*.   *See Richter*, 131 S.Ct. at 786.   Therefore, no relief is warranted.

## B.  Ground Four:   Trial Court Error.

*Impeachment of Dexter Walker.*   At the hearing on pretrial motions, defense counsel sought permission to question Dexter Walker about a 1994 conviction for armed robbery.   The defense contended that Walker's co-defendant in the crime had been Mack's uncle and that Walker had testified against him in exchange for leniency in sentencing.   Defense counsel stated that Walker had been sentenced to 25 years, with 22 years suspended and three to serve.   Mack's attorney argued that the fact that

16

Walker had previously testified against a member of Mack's family showed that he had a bias against Mack.   The trial court denied the motion, holding that the conviction was inadmissible under Miss. R. Ev. 609(b), in that more than 10 years had elapsed since either his conviction or confinement and that the evidence had no probative value.[7]   In his petition, Mack makes two arguments in an attempt to establish that the trial court's ruling was erroneous:   First, he contends that the ten-year limitation was inapplicable because Walker was still "confined," within the meaning of the rule, as long as he was serving the suspended portion of his sentence.   Second, he argues that even if the ten-year limitation were applicable, his attorney should have been allowed to question Walker about the conviction because of its probative value.

Mack raised this assignment of error as his only issue in his direct appeal, where it was rejected on the merits.   But his only argument before the state court was that the evidence should have been allowed because of its probative value. Thus, he has waived any argument concerning the correct interpretation of the statute's 10-year limitation.   In any event, this argument fails to raise a federal issue.

The Sixth Amendment guarantees a criminal defendant the general right to cross-examine the state's witnesses.   *See Davis v. Alaska*, 415 U.S. 308, 316-17

---

[7] Mississippi's rule concerning impeachment by evidence of a prior conviction provides that "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of the conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect," and if the proponent gives written notice to the adverse party of the intent to use the evidence.   Miss. R. Ev. 609(b).

(1974).   This right includes the right of the defense to expose to the jury the witness's possible motivation in testifying against the defendant.   *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).   The right is particularly important where the witness is critical to the state's case against the defendant. *See United States v. Jimenez*, 464 F.3d 555 (5th Cir. 2006).   But the right to cross-examination is not unlimited, and it "may be constrained by the rules of evidence."   *Boyer v. Vannoy*, 863 F.3d 428, 448-49 (5th Cir. 2017).   In *Mills v. Estelle*, 552 F.2d 119 (5th Cir. 1977), the Fifth Circuit considered a case in which the state court had applied a state evidentiary rule similar to the one at issue here to prohibit impeachment of a prosecution witness with a prior criminal conviction.   The Fifth Circuit framed the issue before it as "whether the confrontation clause compels that evidence of a prior unrelated conviction be admitted for general impeachment purposes when there is no colorable claim that the evidence is relevant to a claim of bias." *Mills*, 552 F. 2d at 122-23.   It answered this question in the negative.   *Id.* at 123-24.   In the present case, the trial court clearly had a basis under the state rule for excluding evidence of the prior conviction.   As the Fifth Circuit stated in *Mills*, to hold that the Confrontation Clause was violated in this case by the state court's application of Miss. R. Ev. 609(b) would be "an implicit declaration" that the rule and its federal counterpart, Fed. R. Ev. 609(b), are unconstitutional.   *Id.* at 123. There is no clearly established Supreme Court law that would warrant such a holding.   And even if Mack had a colorable claim that Walker may have been biased against him, this court must apply a standard deferential to the state court's

18

finding against Mack on this claim.   The state court's rejection of this claim was not objectively unreasonable, and no relief is warranted.

*Motion to suppress.*   Mack contends that the state court erred in denying his motion to suppress his confession.   At the hearing on the motion, law enforcement officers testified concerning the procedure and circumstances of the confession. Officer Tyree Jones, the lead investigator on the case, testified that Mack turned himself in voluntarily to JPD headquarters on the evening of January 14, 2009, after learning that a warrant had been issued for his arrest.   Because audio equipment in the interrogation room was not working, Jones conducted the interview in his office, where he could use a typewriter.   Also present during questioning were Detective Eric Smith with JPD, and Investigators Charles Felton and Greg Travis with the Jackson Fire Department.   Jones informed Mack of his rights, and Mack acknowledged that he understood and signed the rights waiver form. Jones and Travis signed the waiver form as witnesses.   Over the next 62 minutes, Jones interviewed Mack.   Jones typed up the statement; Mack then reviewed it, signed it, and initialed each page.   Jones and Travis signed as witnesses.   All of the officers present testified that Mack had not been threatened or coerced during the interview.

Mack took the stand at the suppression hearing and testified that he spent the entire time alone in a room with Jones, who pressured him to give a statement and threatened him with the death penalty if he refused.   He did not recall whether Jones asked him any questions.   Mack denied having read the statement

19

and testified that he signed it because he was being threatened and because he was under the influence of marijuana.

In support of the motion, defense counsel argued that the 62-minute time period that was not recorded was suspicious and that the 19-year-old Mack did not clearly understand that he had been charged with a crime. Thereafter, the trial court made specific factual findings that Mack had been advised of his rights before giving the statement and that he was not threatened or coerced. The court denied the motion, finding that the statement was knowingly, intelligently, and voluntarily given.

Due process requires that a confession of a criminal defendant be voluntary and not the result of coercion. *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985); *Brown v. Mississippi*, 297 U.S. 278 (1936)). The determination as to whether a confession is voluntary is analyzed by consideration of the "totality of the circumstances surrounding the interrogation." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

The admissibility of a confession is a mixed question of law and fact. *Miller v. Fenton*, 474 U.S,.104, 112 (1985). That is, it involves both subsidiary factual determinations and the application of the law to those facts to determine the ultimate legal question of voluntariness. *See id.* On habeas review, a state court's subsidiary factual findings are entitled to a presumption of correctness under § 2254(e)(1), which may be rebutted only be clearly and convincing evidence. *See id.* However, the ultimate question of voluntariness is a matter of

independent federal determination. *Id.* at 450-51.   Here, the testimony of the law
enforcement officers at the suppression hearing was consistent and credible, and
the only evidence casting any doubt on the voluntariness of the confession was
Mack's own self-serving testimony.   There is no clear and convincing evidence to
rebut the trial court's subsidiary factual findings that Mack was read his *Miranda*
rights before giving his statement and that the officers did not threaten or coerce
him.   These findings, and the totality of the circumstances, lead the undersigned
to conclude that Mack understood his rights, that he understood the contents of
the written statement, and that his statement was given knowingly, intelligently,
and voluntarily.   There was no constitutional error in the admission of the
confession into evidence.

   *Testimony of Tameka Walker.*   Tameka Walker testified that Mack was her
cousin and that they grew up together.   The substance of her testimony was that
a month or two before the crime, she had seen Mack with a gun at her home.
Mack's argument regarding her testimony relates to the content of a prior
statement she had given.   According to Mack, in this statement Walker had stated
that she had seen Mack arguing with another individual outside of a vacant house
on Flag Chapel Road.   Mack contends that the trial court should not have let her
testify without including the information that was in her statement.   He argues that
had she testified in accordance with her statement, he could have cross-examined
her on its inconsistencies.   He also claims that her testimony contained

21

information that was not included in her statement and that allowing this testimony was error.

Prior to trial, the defense filed a motion *in limine* to prohibit Walker from testifying that she had seen Mack outside of the house arguing with another individual on the day of the murder.   Defense counsel argued that the testimony was irrelevant.   The court denied the motion.   Nevertheless, prior to her testimony, the state indicated that it would not ask Walker about the incident in front of the house and represented that her only testimony would be that she had seen Mack with a gun a couple of months earlier. After some discussion, defense counsel indicated that she would not object to the testimony.   Defense counsel did not attempt to bring out any other information during her cross examination. Neither side raised any objections during Walker's testimony.   Thus, the trial court never had before it any other issue relating to the substance of her testimony.[8] Moreover, it is difficult to see how Mack was harmed by the fact that Walker never testified that she had seen him on the day of the crime at the scene of the crime. This claim of constitutional error is wholly without merit.

---

[8] Prior to Walker's testimony, defense counsel raised the issue of Walker's having entered the courtroom in violation of the rule excluding witnesses.   When questioned by the Court, Walker testified that she had briefly stuck her head in the courtroom and motioned to someone.   She stated that no testimony was being taken at the time.   Defense counsel nevertheless moved to exclude her testimony.   The Court denied the motion.   In his petition, Mack has raised no issue concerning Walker's entry into the courtroom.

## IV.  CONCLUSION

Mack has failed to show any constitutional error in the admission of his

confession or in any ruling concerning the testimony of Tameka Walker.   He has failed

to establish that the state court's adjudications of his claims of ineffective assistance

and his claim concerning the impeachment of Dexter Walker were contrary to, or

involved an unreasonable application of, clearly established Supreme Court law or were

based upon an unreasonable determination of the facts.    The remaining claims are

procedurally barred.   Accordingly, the undersigned recommends that habeas relief be

denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the

proposed findings, conclusions, and recommendation contained within this report and

recommendation within fourteen (14) days after being served with a copy shall bar that

party, except upon grounds of plain error, from attacking on appeal the proposed factual

findings and legal conclusions accepted by the district court.   28 U.S.C. § 636; Fed. R.

Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29

(5th Cir. 1996).

Respectfully submitted, this the19th day of January, 2018.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE